1                                                 **O/JS-6**

2

3

4

5

6

7                   **UNITED  STATES  DISTRICT  COURT**

8            **FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA**

9

10   **RITA P. DINSMORE-THOMAS,**     )        **CASE NO. SACV 08-587 DOC (PLAx)**

11            **Plaintiff(s),**     )

12            **v.**               )        **O R D E R GRANTING DEFENDANT'S**

                                   )        **MOTION FOR SUMMARY JUDGMENT**

13   **AMERIPRISE FINANCIAL, INC.,**     )

14            **Defendant(s).**     )

15                                     )

16                                     )

17 _____ )

18       Before the Court is Defendant Ameriprise Bank, FSB's, improperly named as Ameriprise

19 Financial, Inc., ("Ameriprise" or "Defendant") Motion for Summary Judgment and Lifting the

20 Temporary Restraining Order (the "Motion").  After considering the moving, opposing, and

21 replying papers, as well as the parties' oral arguments, the Court hereby GRANTS Defendant's

22 Motion.

23     **I.**     **Background**

24         **a.**     **Defendant's Version of the Facts**

25       On April 4, 2006, Plaintiff Rita P. Dinsmore-Thomas ("Thomas" or "Plaintiff") executed

26 an American Express Home Equity Line of Credit Agreement ("Note") in the amount of

27 $100,000.00.  Under the Note, $100,000.00 was advanced to Plaintiff with monthly payments

28 due on the loan balance and a March 4, 2026 maturity date.  The Note was secured by a Deed of

Trust on the property located at 481 North Seranado Street, Orange, CA 92869, also dated April 4, 2006.  The Deed of Trust was assigned from original lender American Express Bank to Defendant on August 20, 2007.  Defendant contends that the last payment made by Thomas on the loan was on October 10, 2007, and was applied to the October 2007 payment.

Under the terms of the Note and pursuant to Thomas's default, Ameriprise terminated the account and accelerated repayment of the entire balance.  The Deed of Trust provides for the right to foreclose on the property and the power of sale upon foreclosure.  Defendant used Regional Trustee Services Corporation ("Regional") to foreclose on the Deed of Trust.  A Notice of Default was recorded on February 1, 2008.  Plaintiff then sent a debt verification request to Ameriprise on February 4, 2008.  Defendant avers that "Plaintiff's request made unreasonable demands, not required of the defendant under the Fair Debt Collection Practices Act, including providing a 'wet ink signature note' and claiming that no debt would be owed if a response was not made within three days."  Def.'s Mot. at 5-6.  Plaintiff made the same requests on February 8, 2008, February 13, 2008, and February 19, 2008.

On February 28, 2008, Ameriprise responded to Thomas's letters by sending Thomas copies of the Note and Deed of Trust, a payment history on the account, a reinstatement letter showing the amount due to bring the loan current and a Demand/Payoff Statement if Thomas instead wished to pay off the loan in full.  Defendant contends that Thomas still failed to cure the default.

On April 29, 2008, Plaintiff purportedly sent Ameriprise a cover letter with documents that she contended constituted a payoff of her loan and a copy of a letter to the IRS.  The letter declared:

> Enclosed you will find a Money Orders [sic] for the above account that I have submitted to the Internal Revenue Service for payment against my Private Exemption account no. 434647170.
> When you, the Vendor, receive the 1040-V with your bill/statement/money order made payable to U.S. Treasury, transmit it to your senior accountant for processing.

1                         Please send me a statement of account showing a "0" balance as soon

2                         as you have made your adjustment.  Also, enclosed please find Form

3                         W9, please provide your TIN number.

4         Attached to the above letter directed to Ameriprise was a letter also dated April 29, 2008,

5 written directly to the IRS stating:

6                         The enclosed Money Orders and 2007 Federal Tax forms 1040-V,

7                         1040, red 1099 O.I.D., red 1096 and 56 are filed to the best of my

8                         knowledge.  The 1099 O.I.D. and 1040 form is to identify me as the

9                         sponsor for the credit that funded the Treasury Bill in the first place;

10                         proof that a federal tax debt exists; and proves pre-payment using my

11                         credit.

12         However, Defendant contends that in connection with the two above-quoted letters, as

13 well as a series of attachments, no negotiable instrument was submitted that would function as a

14 payoff of Thomas's loan.

15         In addition, on May 16, 2008, Thomas sent the trustee, Regional, a letter again

16 contending that Thomas had paid of the loan with an attached document titled, "Private Bond

17 Order for Payment - Non-Negotiable."  The bond document lists its value at one-million dollars

18 and states that the Hawaiian Treasury is surety of the bond.

19         Not considering the bond legitimate, Ameriprise continued with foreclosure, including

20 recording a Notice of Trustee's Sale setting the foreclosure sale for May 28, 2008, at 2:00 p.m.

21 On May 28, 2008, hours before the foreclosure sale, Thomas filed a Complaint and Ex Parte

22 Application for a Temporary Restraining Order against Defendant Ameriprise in order to enjoin

23 the foreclosure proceedings (the "TRO Application").  By her TRO Application, Thomas

24 contended that Ameriprise had consistently failed to respond to her requests to verify and

25 validate her debt.  Thomas thus claimed that Ameriprise could not properly foreclose due to its

26 failures to respond.  In addition, Thomas claimed that she had twice tendered full payment of the

27 loan.  This Court granted the Temporary Restraining Order the same day, noting that it was

28 "troubled by the fact that Thomas did not file suit until the day of the proposed foreclosure sale,

mere hours before the sale was to take place." TRO: Doc. No. 2, at 3. However, the Court noted that it was "equally troubled by Ameriprise' [sic] failure to properly respond to Thomas's request to verify the debt," citing to 15 U.S.C. § 1692g. *Id.* The Court also recognized that the foreclosure was particularly problematic if Thomas properly attempted to pay the debt. *Id.*

As Defendant avers, the Ameriprise loan was junior to a senior lien held by Central Mortgage Company. The senior lender proceeded to foreclose on its lien, for which Plaintiff also was in default, with a Trustee's Sale scheduled for December 3, 2008. On December 2, 2008, Plaintiff filed a second complaint against Central Mortgage Company and sought a temporary restraining order enjoining that sale. The Honorable Andrew J. Guilford denied the emergency request. Due to that case's relation to the instant case, that matter was transferred to this Court.

On December 3, 2008 (i.e. the date set for the foreclosure sale), Thomas filed a voluntary bankruptcy petition. However, the bankruptcy case was ultimately dismissed and closed due to Thomas's failure to file the necessary documentation. As a result, the property went to sale on January 20, 2009. Ameriprise purchased the property in order to protect its junior interest. Defendant Ameriprise further contends that it is the owner of the Note and can provide the original Note to the Court.

### b.    Plaintiff's Version of the Facts

Plaintiff's version of the facts and dispute with Ameriprise are rather difficult to follow. However, it appears that Plaintiff disputes that she ever received any written response from Ameriprise. She also continues to aver that she properly tendered payment and seems to indicate that Ameriprise never expressly told her that her payment was improper. She generally and rather vaguely continues to assert that she has been wronged by Defendant.

## II.    Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts and draw inferences in the manner most favorable to the non-

1   moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993 (1962); *Chevron*

2   *Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).  The moving party bears the initial

3   burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not

4   disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct.

5   2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548 (1986).  When the

6   non-moving party bears the burden of proving the claim or defense, the moving party can meet

7   its burden by pointing out that the non-moving party has failed to present any genuine issue of

8   material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

9        Once the moving party meets its burden, the "an opposing party may not rely merely on

10  allegations on denials or its own pleading; rather, its response must–by affidavits or as otherwise

11  provided in this rule–set out specific facts showing a genuine issue for trial.  If the opposing

12  party does not so respond, summary judgment should, if appropriate, be entered against that

13  party. Fed. R. Civ. P. 56(e)(2); *see also Anderson,* 477 U.S. at 248-49.  Furthermore, a party

14  cannot create a genuine issue of material fact simply by making assertions in its legal papers.

15  There must be specific, admissible evidence identifying the basis for the dispute.  *S.A. Empresa*

16  *de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir.

17  1980).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will

18  be insufficient; there must be evidence on which the jury could reasonably find for [the opposing

19  party]." *Anderson*, 477 U.S. at 252.

20  **III.    Discussion**

21        **a.    Procedural Allegations**

22        Plaintiff contends that Defendant's Motion is premature because discovery has yet to be

23  completed in this matter.  However, Plaintiff's contention is without merit.  The discovery cut-

24  off date was set for June 22, 2009, and no extensions have been requested or granted in this

25  matter.  Indeed, the motion cut-off was set for July 20, 2009, and Defendant properly filed and

26  noticed the hearing on the instant Motion for that date (though the Court, on its own motion,

27  moved the hearing date).  As a result, the Court rejects any argument put forth by Plaintiff that a

28  summary judgment motion is procedurally improper.  In addition, a motion to dismiss pursuant

1  to Fed. R. Civ. P. 12(b)(6) is not currently before the Court, and Plaintiff cannot merely rely on

2  the sufficiency of her pleadings at this stage in the litigation in response to Defendant's Motion.

3  Plaintiff's reference to the Motion as either a motion to dismiss or motion for summary judgment

4  is without merit.

5           **b.     Federal Fair Debt Collection Practices Act**

6                  **1.     Defendant properly verified the debt under the federal Fair Debt**

7                         **Collection Practices Act.**

8           The federal Fair Debt Collection Practices Act ("FFDCPA"), 15 U.S.C. § 1692g, provides

9  for the validation of debts.  15 U.S.C. § 1692g(b) states, in pertinent part:

10                 If the consumer notifies the debt collector in writing within the

11                 thirty-day period described in subsection (a) of this section that the

12                 debt, or any portion thereof, is disputed, or that the consumer

13                 requests the name and address of the original creditor, the debt

14                 collector shall cease collection of the debt, or any disputed portion

15                 thereof, until the debt collector obtains verification of the debt or a

16                 copy of a judgment, or the name and address of the original creditor,

17                 and a copy of such verification or judgment, or name and address of

18                 the original creditor, is mailed to the consumer by the debt collector.

19                 Collection activities and communications that do not otherwise

20                 violate this subchapter may continue during the 30-day period

21                 referred to in subsection (a) of this section unless the consumer has

22                 notified the debt collector in writing that the debt, or any portion of

23                 the debt, is disputed or that the consumer requests the name and

24                 address of the original creditor.  Any collection activities and

25                 communication during the 30-day period may not overshadow or be

26                 inconsistent with the disclosure of the consumer's right to dispute the

27                 debt or request the name and address of the original creditor.

28         As Defendant points out, the FFDCPA does not explicitly define what constitutes proper

1    debt validation.  However, the Ninth Circuit has articulated the baseline standard for a

2    verification of a debt in *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th

3    Cir. 2006).  In that case, the Court adopted the standard as articulated by the Fourth Circuit,

4    holding that "[a]t a minimum, 'verification of a debt involves nothing more than the debt

5    collector confirming in writing that the amount being demanded is what the creditor is claiming

6    is owed.'" *Id.* at 1173-74 (*quoting Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)).

7         Plaintiff's initial request dated February 4, 2008, as well as the three that shortly

8    followed, asked Defendant to (1) provide the name and address of the original creditor, (2)

9    provide the name and address of the current creditor, and (3) provide a copy of the original

10   contract as well as "return the original wet ink signature note."  Kaufman Declaration, Exh. 2.

11        Defendant contends it complied with the request by sending to Plaintiff on February 28,

12   2008 (24 days later), a copy of the original Note and Deed of Trust that identify the original

13   creditor, as well a payment history on the loan indicating all payments made by Plaintiff

14   including her failures to pay.  In addition, Defendant provided Plaintiff with a Reinstatement

15   Quote identifying the amount Plaintiff had to pay in order to reinstate the loan.  Furthermore,

16   Defendant provided Thomas with a Payoff Statement that informed Plaintiff of what she would

17   need to pay in order to pay off the loan in full.  The documents further confirmed that the

18   Plaintiff owed the debt and the amount due on the loan.  In addition, the Note provided Plaintiff

19   with the identification information for the original creditor, American Express Bank, FSB.

20   While Defendant avers that the Reinstatement Quote and Payoff Statement provided Plaintiff

21   with the address and telephone number of the current creditor, the Hjorten Declaration provides

22   that Defendant is the current lender.  As such, these documents do not appear to provide the

23   address and telephone of the current lender but include contact information for the trustee and

24   loan servicer.  Yet, Plaintiff clearly had the contact information for Defendant as she directed

25   here inquiries to Defendant Ameriprise.  In addition, the payment history identified Ameriprise

26   as the lender.  As such, these documents clearly meet the standard as articulated in *Clark*.  In

27   addition, the Court cannot see how Defendant is required to return the original note to Plaintiff

28   in lieu of a copy of the note.  As a result, Defendant likely complied with the verification

1   requirements under the act.

2        Plaintiff does not dispute that such documents allegedly provided by Defendant constitute

3   an adequate verification of the debt under the FFDCPA.  Instead, Plaintiff appears to contend

4   that she never in fact received such a verification.  However, her claim is rather conclusory and

5   devoid of any factual support.  *See Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the

6   nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on

7   conclusory allegations unsupported by factual data to create an issue of material fact.").  As a

8   result, the Court finds that Plaintiff properly verified the debt.  However, separate grounds exist

9   for granting Defendant summary judgment on Plaintiff's FFDCPA claim as discussed below.

10                    **2.      Defendant is not a debt collector subject to liability under the**

11                              **FFDCPA.**

12        Despite the potential factual dispute regarding debt verification, the Court finds that

13   summary judgment is warranted on the FFDCPA claim on other grounds.  Liability under the

14   federal Fair Debt Collection Practices Act ("FFDCPA"), 15 U.S.C. § 1692, *et seq.*, only applies

15   to "debt collectors" engaged in "debt collection," as those terms are defined in the statute.  *See*

16   15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

17   practices by debt collectors, to insure that those debt collectors who refrain from using abusive

18   debt collection practices are not competitively disadvantaged, and to promote consistent State

19   action to protect consumers against debt collection abuses.").   "The term 'debt collector' means

20   any person who uses any instrumentality of interstate commerce or the mails in any business the

21   principal purpose of which is the collection of any debts, or who regularly collects or attempts to

22   collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.

23   C. § 1692a(6).  By contrast, the FFDCPA defines a "creditor" as "any person who offers or

24   extends credit creating a debt or to whom a debt is owed, but such term does not include any

25   person to the extent he receives an assignment or transfer of a debt in default solely for the

26   purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).  Similarly,

27   excepted from the definition of a "debt collector" is "any officer or employee of a creditor while,

28   in the name of the creditor, collecting debts for such creditor," 15 U.S.C. § 1692a(6)(A), or "any

1    person collecting or attempting to collect any debt owed or due or asserted to be owed or due

2    another to the extent such activity...concerns a debt which was not in default at the time it was

3    obtained by such person," 15 U.S.C. § 1692a(6)(F)(iii).  In addition, "[t]he legislative history of

4    section 1692a(6) indicates conclusively that a debt collector does not include the consumer's

5    creditor's, a mortgage servicing company, *or an assignee of a debt, as long as the debt was not*

6    *in default at the time it was assigned.*"  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.

7    1985) (emphasis added).

8        Here, Defendant Ameriprise is in a position analogous to the original creditor and is not

9    subject to the provisions of the statute.  Indeed, the original lender assigned the debt to

10   Ameriprise on August 20, 2007.  And by the declaration of Melissa Hjorten, Defendent indeed

11   represents that it is the current lender (present beneficiary) on the loan.  Hjorten Declaration, at

12   2.  Furthermore, Defendant contends that Thomas was not in default on the loan until two

13   months later.  Thomas does not dispute this fact and, indeed, seems to dispute that she was ever

14   in default on the loan.  As a result, Defendant Ameriprise, as an assignee of the debt that was not

15   in default at the date of assignment, cannot constitute a "debt collector" under the FFDCPA.

16   Thus, Ameriprise cannot be held liable for a violation of the FFDCPA.

17              **c.    Tender of Payment**

18       By her complaint, Plaintiff asserts that she "has twice tendered payment in kind to

19   defendant to no avail....Neither full tender was accredited to plaintiff's account [sic] Defendant

20   failed to return receipt zeroing the account to the plaintiff."  Complaint, ¶ 32.

21       By the instant Motion, Defendant contends that Plaintiff never properly tendered full

22   payment of the loan.  The Reinstatement Quote dated February 27, 2008, informed Plaintiff that

23   she could reinstate her loan by March 20, 2008, through a check or money order in the amount

24   of $4,486.59.  However, rather than respond to the Reinstatement Quote, on April 29, 2008,

25   Plaintiff purported to send Defendant a money order constituting a full payoff of her loan.  By

26   providing the Court with the documents allegedly submitted to it as a money order, Defendant

27   contends that Plaintiff did not actually provide Defendant with a legitimate payoff.  Indeed, by

28   examining the submitted documents, the alleged money order is somewhat incomprehensible to

1    the Court.  First of all, the Court notes that Plaintiff's cover letter identifying that Plaintiff has

2    paid her account in full indicates that she has submitted a money order to the "Internal Revenue

3    Service for payment against my Private Exemption account no. 434647170."  In addition, she

4    appears to have submitted a series of tax forms.  Finally, on what appears to be one of her

5    payment coupons for the loan, she has handwritten over the coupon, the phrase "Money Order",

6    has written in the amount of $121,734.48, and directs Ameriprise Financial to pay the amount to

7    the United States Treasury.  By looking at one of the tax forms (most of which are blank and at

8    most are partially filled out), it appears that Plaintiff may be claiming that she is owed a federal

9    income tax credit in that same amount.  Thus, she is alleging that her tax refund will constitute

10   the payoff of her loan.  Yet, as far as the Court can tell, an actual money order is not contained

11   within these documents, nor is any other seemingly legitimate payment form.  Indeed, the Court

12   cannot see how or why Defendant should have relied on Plaintiff's bare assertion that she was

13   going to receive a tax refund for over $120,000.00 dollars based on poorly filled out tax forms.

14          Furthermore, Plaintiff does not appear to dispute that the documents provided the Court

15   are the full set of documents she sent to Defendant constituting her money order (i.e. she does

16   not claim that they have misidentified the documents or omitted some of the documents).

17   Indeed, she provides the exact same documents to the Court as attached to her affidavit in

18   support of her opposition.  In addition, she does not clearly respond to Defendant's argument

19   that the documents do not constitute a legitimate money order.  Instead, while she may assume

20   that they do, she at most contends that Defendant failed to inform her that the payoff did not take

21   place and at points seems to imply that Defendant improperly withheld her money (though such

22   assertion seems without merit considering the problems identified with the alleged money order).

23   However, Plaintiff does not provide the Court with any legal basis requiring Defendant to

24   respond to her suggestion that such documents constituted a payoff of her loan.  In addition, to

25   the extent Defendant was under some kind of responsibility to inform Plaintiff that her alleged

26   payoff would not be accepted, she has not identified a harm resulting from Defendant's failure.

27   In other words, she has not claimed that she would have been able to properly tender payment in

28   full but for Defendant's failure to inform her that they had not accepted her phantom money

10

1   order.  Furthermore, when Defendant did not respond as she contends, she allegedly submitted

2   another form of payment as discussed below, also undermining any argument that she was

3   harmed by Defendant's failure to respond.  Finally, the Court notes that in a similar California

4   case in which the defendant lender foreclosed on plaintiff borrowers home despite plaintiffs'

5   contention that they had tendered payment in full, the California Court of Appeal held that

6   foreclosure was proper where plaintiffs proffered tender with a worthless bond, despite the fact

7   that the defendant lender twice failed to respond to the tender.  *McElroy v. Chase Manhattan*

8   *Mortg. Corp.*, 134 Cal. App. 4th 388, 390, 394 (2005).   Thus, failure to respond to worthless

9   tenders does not appear to make an otherwise legitimate foreclosure instead wrongful.

10          Indeed, in *McElroy*, plaintiff borrowers contended that under California Civil Code §

11   1501 and California Code of Civil Procedure § 2076, the defendant lender's "alleged failure to

12   respond [to the tender] waived any objections to their tender of payment thereby discharging the

13   debt by operation of law."  Id. at 393.  However, the *McElroy* Court noted that "'[t]he purpose of

14   these two code sections is to allow a debtor who is willing and able to pay his debt to know what

15   his creditor demands so that the debtor may if he wishes, make a conforming tender.'"  *Id*. at 394

16   (*quoting Noyes v. Habitation Resources, Inc.*, 49 Cal. App. 3d 910, 914 (1975)).  As such,

17   "'[t]hese statutory provisions do not apply where, as here, the amount of the creditor's demand is

18   known to the debtor and the amount of the tender is wholly insufficient."  *Id*. (*quoting Gaffney v.*

19   *Downey Savings & Loan Assn.,* 200 Cal. App. 3d 1154, 1166 (1988).  In the instant case,

20   Plaintiff makes no assertion that she did not know the amount demanded by the creditor.  Indeed,

21   the Notice of Default indicated the amount she was in arrears (and the Notice of Trustee's Sale,

22   recorded prior to Plaintiff's alleged second tender, also listed the full amount due), the alleged

23   money order was written over a payment coupon indicating the account balance, Defendant

24   provided her with a Reinstatement quote and Payoff letter, and Plaintiff's verification letter did

25   not request the amount due on the loan (implying that the amount due was likely already known

26   by Plaintiff).  Thus, with no affirmative evidence that Plaintiff was unaware of the amount due

27   on her note, the Court cannot find that Defendant's alleged failure to respond to worthless tender

28   operates as a discharge of the debt.

1    As to Plaintiff's second attempt to pay her loan in full through a "Private Bond Order for
2    Payment - Non-Negotiable" ("Private Bond") on May 16, 2008, Defendant contends that the
3    bond by its own terms cannot be used to pay off the debt because it indicates that it is not a
4    negotiable instrument.  Second, Defendant argues that the document is clearly a fictitious
5    instrument.  Indeed, Defendant cites to a number of state cases in which mortgagors attempted to
6    pay off loans with bonds deemed worthless by the Court.  *See, e.g., McElroy, supra*; *see also,*
7    *U.S. Bank v. Phillips*, 366 Ill. App. 3d 593 (2006).

8    The Private Bond, claimed to be worth one-million dollars, appears to have been posted
9    by an individual named Ernest Walker Bey through "The Bey Family Irrevocable Trust" and
10   purports to be secured by the Hawaiian Treasury.  By its terms, it states that the "Comptroller of
11   the Currency, (DAGS), The Hawaiian Treasury- Russ K. Saito is directed to issue money on
12   account via this bond order to REGIONAL TRUSTEE SERVICES CORPORATION (or
13   Lender) for satisfaction of Loan Account...and to close/terminate accounts as paid, in accordance
14   to and per Sections 75; 91 & 103 of the Organic Act April 30, 1900," and otherwise identifies
15   the Hawaiian Treasury as the surety of the bond.  However, the Organic Act of April 30, 1900, is
16   a federal act that provided a government for the (then) Territory of Hawaii (the "Organic Act"),
17   56 Cong. Ch. 339, April 30, 1900, 31 stat. 141.  Sections 75, 91, 81, and 103 of the Organic Act
18   in no way purport to impose an obligation on the Hawaiian Treasury to honor private bonds.  In
19   addition, none of the other cited authorities purporting to identify the source of the Hawaiian
20   Treasury's obligation to honor the instant bond actually stand for such a proposition (*See, e.g.*,
21   18 U.S.C. §§ 241 and 242 and the Uniform Commercial Code §§ 1-101 and 10-104).  As stated
22   in *McElroy*, "[s]ince the Bill purports to identify the source of the Secretary of the Treasury's
23   obligation to honor the Bill, and the cited source does not establish an obligation, we
24   unhesitatingly conclude the Bill is a worthless piece of paper, consisting of nothing more than a
25   string of words that sound as though they belong in a legal document, but which, in reality, are
26   incomprehensible, signifying nothing."  *McElroy*, 134 Cal. App. 4th at 393.  As such, the Private
27   Bond, as a worthless piece of paper, cannot constitute a legitimate tender.

28   In her Statement of Disputed Fact, Plaintiff argues that "repayment need only be made in

1   equivalent kind: [a] negotiable instrument representing credit."  Pl.'s Statement of Disputed

2   Facts at 9.  Plaintiff seems to concede that a negotiable instrument is required to pay off the loan.

3   And, as Defendant points out, the bond, by its own terms, is non-negotiable.  However, the

4   primary concern for the Court is the seemingly fictitious nature of the bond.  Plaintiff provides

5   no argument that the bond is legitimate and provides the same bond document to the Court as

6   does Defendant.  As discussed above, the Private Bond, on its face, clearly is not insured by the

7   Hawaiian Treasury.  Thus, Defendant engaged in no wrongdoing by rejecting the worthless

8   Private Bond.

9        As a result, because Plaintiff failed to tender proper payment to Defendant, Plaintiff's

10   allegation that the foreclosure was wrongful on such grounds is without merit.

11            **d.    Vexatious Litigant**

12        By its Motion, Defendant also requests that this Court deem Plaintiff a vexations litigant

13   pursuant to California Code of Civil Procedure § 391, *et seq.*  Cal. Code of Civ. P. § 391(b)

14   defines "vexatious litigant" and includes as one definition, an individual who, "[i]n any litigation

15   while acting in propia persona, repeatedly files unmeritorious motions, pleadings, or other

16   papers, conducts unnecessary discovery, or engages in other tactics that are frivolous solely

17   intended to cause unnecessary delay.  Cal. Code of Civ. P. § 391(b)(3).  Defendant contends that

18   Plaintiff used the Court to obtain emergency relief under false pretenses, has instituted two

19   clearly unmeritorious actions related to the same property, improperly filed a bankruptcy

20   petition, and has otherwise engaged in improper behavior.  It appears that by deeming Plaintiff a

21   vexatious litigant, Defendant seeks to have this Court require Plaintiff to obtain "leave of court

22   before filing additional actions on the property subject to this action."  Def.'s Mot. at 17.  While

23   Defendant does not provide the Court with the basis for so doing, Cal. Code of Civ. P. 391.7(a)

24   allows the Court to "enter a prefiling order which prohibits a vexatious litigant from filing any

25   new litigation in the courts of this state in propia persona without first obtaining leave of the

26   court where the litigation is proposed to be filed," and indicates that "[d]isobedience of the order

27   by a vexatious litigant may be punished as a contempt of court."

28        While the Court is seriously concerned by Plaintiff's conduct, as alleged by Defendant,

1   the extreme remedy preventing her from pursuing even unrelated litigation without leave of

2   court is not yet warranted.  While the Court recognizes Defendant's concerns, the Court must

3   also be sensitive to the Plaintiff's pro se status and is not yet ready to brand her a vexatious

4   litigant.

5              e.      **Additional Allegations**

6         As Defendant notes, the facts as alleged in Plaintiff's complaint primarily speak to three

7   major issues: (1) whether Defendant failed to verify the debt; (2) whether Plaintiff paid off her

8   debt; and (3) whether Defendant had the right to foreclose on the property.  However, while not

9   clearly alleging additional facts, Plaintiff makes cursory references to other legal issues

10  throughout her complaint.  As a result, the Court addresses those additional allegations here.

11        To begin, Plaintiff repeatedly states that the primary issue in this case is "who owns the

12  note and can produce the original note."  Pl.'s Statement of Disputed Facts at 7.  However,

13  Plaintiff's point is problematic for two reasons.  First, Defendant has provided the Court with its

14  Corporate Assignment of Deed of Trust executed by the original lender.  *See* Kilgore

15  Declaration, Exh. 3.  Thus, there seems to be no factual dispute that Ameriprise owns the loan.

16  Second, Plaintiff's claim that Defendant must produce the original note is based on her implicit

17  claim that the original note is necessary for foreclosure.  However, nothing in the statutory

18  framework governing non-judicial foreclosure contains a requirement that the trustee,

19  mortgagee, beneficiary, or any of their authorized agents produce the original note to initiate the

20  foreclosure proceedings.  *See* Cal. Civ. Code § 2924; *San Diego Home Solutions, Inc. v.*

21  *Reconstruct Co.*, No. 08cv19701(AJB), 2008 WL 5209972, *2 (S.D. Cal. Dec. 10, 2008).

22        In addition, Plaintiff cursorily refers to the California Rosenthal Fair Debt Collection

23  Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, et seq.  However, Plaintiff fails to allege any

24  conduct by Defendant violating that act.  In addition, as other district courts have held, mortgage

25  "foreclosure does not constitute debt collection under the RFDCPA." *Izenberg v. ETS Services,*

26  *LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); *see also, Ines v. Countrywide Home Loans*,

27  No. 08cv1267 WQH (NLS), 2008 WL 4791863 *1, *3 (S.D. Cal. Nov. 3, 2008) (while plaintiff

28  contended that defendants failed to comply with plaintiff's lawful demands to validate the debt

pursuant to RFDCPA, the court found that the complaint "[arouse] out of the allegedly unlawful foreclosure on [p]laintiff's property pursuant to a deed of trust, which does not fall within the meaning of the RFDCPA or the [F]FDCPA").  Thus, as a matter of law, Defendant has not violated the RFDCPA.

Plaintiff refers to fraud in her complaint but only in the context of alleging that "defendant is not a person entitled to enforce the alleged DEBT because they lack standing and legal capacity to enforce the instruments."  Complaint, ¶ 3.  However, though the parties argue over whether Defendant owns the note, the undisputed facts demonstrate that Defendant does indeed have the original note as Defendant was assigned the Deed of Trust and Note from the original lender.  Thus, the fraud allegations, as subsumed in the issue of whether Ameriprise has the right to foreclose, are clearly without merit.  In addition, Plaintiff's allegations of fraud are rather vague and conclusory and clearly do not meet the pleading requirements of Fed. R. Civ. P. 9(b).  Nothing in Plaintiff's opposition to the instant Motion remedies these deficiencies.  Plaintiff also makes cursory reference to predatory lending in paragraphs 12 and 13 of her complaint.  But again, as with her fraud allegations, it is unclear exactly what unlawful conduct she is charging Defendant with in addition to her allegation that it improperly foreclosed on her property without validating the debt.  As a result and as Defendant contends, Plaintiff's brief allegations of predatory lending fail to state a claim as a matter of law.

Plaintiff also cites to California Financial Code §§ 33560 and 22340 and alleges in her first cause of action that Defendant has violated state securities law.  Not only are her citations to the financial code puzzling, she has failed to produce any evidence demonstrating a  violation of any securities laws despite the close of discovery in this matter.  For example, Cal. Fin. Code § 33560 merely provides definitions for that article and does not place affirmative duties on lenders.  In addition, Cal. Fin. Code § 22340 allows for the selling of promissory notes to institutional investors; Defendant qualifies as an institutional investor under Section 22340(b)(2).  Thus, as a matter of law, Plaintiff has failed to state a claim for state securities law violations.

Furthermore, any claim that Plaintiff and Defendant were in some type of fiduciary

1   relationship is without merit.  *See* Complaint, ¶1.  Relationships between a lender and a borrower

2   are not typically treated as fiduciary relationships.  "A commercial lender is entitled to pursue its

3   own economic interests in a loan transaction.  This right is inconsistent with the obligations of a

4   fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on

5   behalf of and for the benefit of another."  *Nymark v. Heart Fed. Savings & Loan Assn.,* 231 Cal.

6   App. 3d 1089, 1093 n.1 (1991).  As the current lender on the loan, the Court fails to see how the

7   parties are in a fiduciary relationship.

8         Plaintiff also puzzlingly refers to impossibility of performance in her complaint.  *See*

9   Complaint, ¶25.  However, the doctrine of impossibility in contract is a defense to an action for

10  breach of contract.  *Monroe v. Oakland Unified Sch. Dist.*, 114 Cal. App. 3d 804, 831 (1981).  It

11  is not an independent cause of action, and Plaintiff does not adequately demonstrate how it

12  applies to the instant matter.

13        Finally, Plaintiff's briefing in opposition to the instant motion raises statutory violations

14  no where alleged in her complaint.  For example, she charges Defendant with violating the

15  federal Truth in Lending Act and Real Estate Settlement Procedures Act.  Not only does

16  Plaintiff's briefing make it unclear how exactly Defendant violated such acts, she cannot oppose

17  the instant Motion based on grounds that are not in issue under the pleadings.  "'Simply put,

18  summary judgment is not a procedural second chance to flesh out inadequate pleadings.'"

19  *Wasco Prod., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (*quoting Fleming*

20  *v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990). //

21        **IV.   Disposition**

22        For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary

23  Judgment as to Plaintiff's entire complaint and LIFTS the Temporary Restraining Order.

24  IT IS SO ORDERED.

25  DATED: August 3, 2009

26

27  _____

28        DAVID O. CARTER
        United States District Judge

16